KALISCH-JARCHO, INC., Respondent, v CITY OF NEW YORK, Appellant.

First Department, March 1, 1988

## APPEARANCES OF COUNSEL

*David E. Montgomery* of counsel *(Frederick R. Rohn* with him on the brief; *Sacks, Montgomery, Pastore & Levine, P. C.,* attorneys), for respondent.

*Barry P. Schwartz* of counsel *(Fay Leoussis* with him on the

brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for appellant.

## OPINION OF THE COURT

ROSENBERGER, J.

In this contract dispute between appellant, the City of New York, and respondent, a private plumbing contractor, we are called upon to determine the continuing vitality of the long-standing rule enunciated in *Borough Constr. Co. v City of New York* (200 NY 149 [1910]), and to strike a balance between the conflicting interests of the municipality in ensuring timely completion of public projects and of the private contractor in preserving contractual limits on the risks it has assumed. Respondent was ordered to perform certain work which, according to the project specifications, had been delegated to the general construction contractor. Instead of complying with the disputed work order, as required by article 27 of the contract, respondent sought a judicial determination as to whether the work was clearly beyond the limits of its plumbing contract. The Supreme Court found that it was.

We concur with the Supreme Court's finding. Further, we hold that respondent was not required to comply with article 27 of the contract before seeking a judicial determination and declaration as to whether the work ordered by the Commissioner was clearly beyond the limits of respondent's plumbing contract and, therefore, under the rule in *Borough Constr. Co. v City of New York (supra),* work for which respondent could not subsequently recover compensation. *(See also, Weil Plumbing Corp. v State of New York,* 294 NY 6 [1944]; *Seglin Constr. Co. v State of New York,* 22 NYS2d 94 [Ct Cl 1940], *affd* 262 App Div 782 [3d Dept 1941].) In *Borough Constr. Co.,* the Court of Appeals established the general rule that where a municipal representative requires a contractor to do something which is "clearly beyond the limits of the contract, the contractor may not even under protest do it and subsequently recover damages" *(supra,* 200 NY, at 157). To permit the contractor to recover compensation for such work as though it were a breach of contract would, the court feared, create a situation ripe for abuse: "a municipal representative and contractor might by collusion make the theory a ready method of saddling the municipality with extra work and materials which it never authorized and of burdening it with liabilities which it never contemplated" *(supra,* at 156).

It is true that the contract under consideration in *Borough Constr. Co. (supra)* did not contain a provision similar to article 27. However, we do not agree that the parties, by including such a disputed work procedure in their contract, could escape the operation of the *Borough Constr. Co.* rule which imposes a limitation on the power of the contractor and the municipal representative to expand the scope of a municipal contract and the municipality's liability thereunder.

The provisions of article 27 of the contract herein afford no protection against the abuses foreseen by the Court of Appeals in *Borough Constr. Co. (supra)* and, consequently, we can see no reason why this important policy consideration should be subordinated to the contractual agreement of the parties. The dissent would limit the rule in *Borough Constr. Co.* to cases where there is evidence of collusion between the contractor and a municipal representative. However, in such circumstances involving patent criminality, there would be no need for the city to limit its relief from fraud to the invocation of that rule. Thus, the dissent's limitation on the rule in *Borough Constr. Co.* would vitiate the rule's salutary effect and would effectively nullify it. Therefore, we decline to so limit that holding.

While we agree with the dissent that the disputed work provision of article 27 in the contract was designed to avoid costly delays on public works projects, and thereby protect an important public interest, we cannot agree that this provision would effectively preserve the right of the contractor to recover the value of work ordered by the Commissioner. Nothing in article 27 or elsewhere in the contract binds appellant to accept the Commissioner's interpretation. To the contrary, article 33 thereof expressly states that neither the city nor any of its departments or employees "shall be bound, precluded or estopped by any determination * * * made or given under or in connection with this contract by the City, [or] the Commissioner * * * from showing the true and correct classification, amount, quality or character of the work actually done; or that any such determination * * * was untrue, incorrect or improperly made". The inequity of requiring the contractor to comply with an erroneous determination and, in so doing, forfeit his right to be paid for the benefits conferred upon the municipality, is obvious.

The dissent maintains that it is unlikely that the city would ever invoke article 33 in defending against an action by a contractor who has complied with a disputed work order.

However, the contractor's right to be paid for work performed should not be made dependent upon the municipality's unfettered discretion to treat article 33 as mere surplusage or to invoke it. Such an open-ended legal risk cannot be factored into any rational calculus for doing business with the city. Furthermore, it would expose the contractor to unlimited risk if he could be forced to perform work which is "palpably and manifestly beyond the provisions of the contract" as this confers upon the municipality the unilateral power to modify the agreement and to impose on the contractor risks which he did not assume as part of his bargain.

We do not think that the public interest in avoiding construction delays on public projects will be thwarted by permitting a contractor to seek judicial interpretation of his contract and a declaration of his rights thereunder before complying with a disputed work order. The concern expressed by the dissent, that contractors will run to the courts every time a dispute arises, is unfounded. If a contractor who has not followed the disputed work procedure loses the declaratory action he will be liable for the breach of his contract and the losses resulting therefrom. The prospect of incurring such a substantial liability, we believe, is sufficient to deter frivolous and vexatious litigation. Consequently, we reject the contention that respondent was barred from seeking a declaration of its rights under the contract until it had complied with the disputed work provision.

Respondent was awarded the plumbing contract, one of the four prime contracts for the Department of Sanitation's new storage depot and garage in The Bronx. Separate contracts covering the general construction work, electrical work, and the heating, ventilating and air conditioning (HVAC) work for this project were also awarded by appellant. The work to be done by the respective contractors was identified in their contract drawings and specifications.

The project called for the installation of underground fuel oil tanks, certain of which were to be installed by the plumbing contractor and others to be installed by the HVAC contractor. Paragraph 1.11 of section 15400 of the plumbing specifications, captioned "Separation of Work Between Contracts", indicates that the general construction contractor was to excavate and install the concrete pads on which the underground tanks were to rest, while the plumbing contractor was required to encase the tanks in concrete after installing them. The HVAC contract specifications similarly delegate to the

general construction contractor the task of excavating and installing concrete pads under the fuel tanks which the HVAC contractor was to install. Notwithstanding the exclusion of this work from respondent's contract under the separation of work provision in the plumbing specifications, the Commissioner, pursuant to article 27, ordered respondent to excavate and install the pads under the fuel tanks.

Although the Commissioner is authorized to modify or change the contract to include "extra work", the work respondent was ordered to do could not be considered extra work as defined in article 25 of the contract. That provision, incorporating section 6-110 of the Administrative Code of the City of New York, prohibits the Commissioner from ordering extra work which would increase "the price to be paid by more than ten percent of the contract price". Respondent contends that the excavation of the rock underlying the fuel tanks and the installation of the 13 concrete pads would cost it considerably more than $100,000. The total plumbing contract price was less than $1,000,000. The only other basis for requiring respondent to perform this work was the Commissioner's determination that it was, in fact, contract work.

Appellant maintains that the plumbing contractor was responsible for all work shown on the plumbing drawings, unless otherwise indicated on the drawings. The contract drawing "P-9" shows in detail the work for the component parts of the underground fuel oil tank. Although the details show the fuel tank resting on the concrete supports, there is no notation to indicate who is responsible for this work. Indeed, there is only one place on drawing P-9 where such an indication appears. The detail of the "oil interseptor" [sic] shows an item of work to be done "by general contractor". Appellant contends that this supports its position that, except for this one item for the oil interceptor, the plumbing contractor was responsible for all the rest of the work shown on drawing P-9.

However, this same detail of the oil interceptor also indicates two items of work to be done "by plumbing contractor". If appellant's contention were correct, this last notation would be unnecessary. Moreover, as respondent points out, appellant's argument reduces the contract specifications to mere surplusage, for it would require that each and every item delegated to a contractor in the separation of work specification be shown on the contract drawings in order to have any contractual significance. Such a construction is contrary to

general principles of contract interpretation *(Tougher Heating & Plumbing Co. v State of New York,* 73 AD2d 732, 733-734 [3d Dept 1979] [every part of the contract should be interpreted to give effect to its general purpose and any ambiguity should be resolved against the party who drafted the agreement]; *Felhaber Corp. v State of New York,* 63 Misc 2d 298, 303-304 [Ct Cl 1970], *affd* 40 AD2d 881 [3d Dept 1972]), and the weight of the evidence regarding industry norms and practice.

Affidavits from respondent's employee who prepared the bid, from an independent consultant who was division engineer for the New York City Department of Public Works for 18 years, and from the president of the company awarded the HVAC contract, provide very persuasive evidence that the plumbing drawings and specifications clearly and unambiguously allocate to the general construction contractor the task of excavating and installing the concrete pads for the underground tanks. The HVAC contractor whose contract specifications contain a similar separation of work for the underground tanks, is emphatic that "when the specifications advise the HVAC contractor that the general construction contractor will excavate and install these concrete pads, there is no doubt that the work is not part of the HVAC contract." The independent consultant agreed that it "is very common, and raises no ambiguity or doubt of any sort, to show work on a plumbing drawing, as was done here, and then to specifically advise the plumber in his specification which portion of the work he will do and which portion he will not do." "This is particularly true", according to the consultant's affidavit, "with non-mechanical work that is related to the plumbing work, like the concrete pads in this case."

This interpretation of the contract documents is further supported by the fact that neither respondent nor the HVAC contractor included any amount in their respective bids for performing the work allocated to the general construction contractor. We note that, although the dissent has adopted appellant's version of what transpired at the meeting between the parties on June 5, 1985, respondent maintains that the question of who was to do the work now in dispute arose when respondent's representative "mentioned that coordination would be necessary between the general construction contractor and Kalisch-Jarcho since we would be installing and encasing tanks which would be placed on pads to be excavated and poured by the general construction contractor." This is

entirely consistent with respondent's position that it never doubted that this disputed work was the general construction contractor's responsibility.

Appellant's reliance on the "conflicts" provision in article 1, paragraph (H) of the contract is misplaced because here there is no conflict or ambiguity between the plumbing drawings, which are silent, and the specifications which expressly delegate the task of excavating and installing the pads to the general construction contractor. We are also unpersuaded by the dissent's claim that subparagraphs (B) and (C) of paragraph 1.11 "clearly and undisputably" demonstrate that the disputed work was respondent's responsibility. Subparagraph (B) provides that *"[i]n the absence of more detailed information,* this list shall be taken as a specific instruction to this contract to include the work assigned to it." (Emphasis supplied.) The drawing P-9, which was silent as to the separation of work for the excavation and installation of the foundation pads, cannot be considered as providing "more detailed information" on the division of contractual responsibility. Subparagraph (C) of the specifications states that "[i]ndications that this Contractor is to perform an item of work means that he is to perform the work corresponding to this Contract only *except as specifically noted otherwise."* (Emphasis supplied.) The plumbing specifications expressly indicate that the general construction contractor was to do the excavation and concrete work under the fuel tanks; the plumbing drawings do not specifically note otherwise.

Nor do we agree with the dissent that section 15475 of the plumbing specifications relating to "excavation, backfilling, paving and concrete work" is inconsistent with the separation of work provision of said specifications. Paragraph 1.01 (C) (1) (a), which is cited by the dissent, includes the excavation and concrete work "as indicated on the Drawings and specified herein". However, the immediately preceding paragraph, defining the scope of section 15475, states: "General and Other Conditions, and Specific Requirements *apply to all of this section."* (Emphasis supplied.) Consequently, section 15475 is expressly limited by and must be read together with paragraph 1.11 of the Specific Requirements regarding the "Separation of Work Between Contracts".

Accordingly, the judgment of Supreme Court, Bronx County (Barry Salman, J.), entered August 29, 1986, which declared that plaintiff-respondent is not contractually obligated to perform certain work ordered by defendant-appellant and which

denied appellant's cross motion for summary judgment dismissing the complaint, should be affirmed, without costs.

SANDLER, J. P. (dissenting). In this declaratory judgment action, plaintiff Kalisch-Jarcho, Inc., seeks a declaration that it is not obligated under a plumbing contract entered into between it and the defendant City of New York, part of a large-scale multicontractor construction project, to perform certain work which the Commissioner of the city's Department of Sanitation directed it to perform. Notwithstanding the fact that the Commissioner's determination was rendered in accordance with procedures explicitly set forth in the contract, that the contract obligated the plaintiff to comply promptly with the Commissioner's determination, and that the contract reserved for the plaintiff the right to commence a lawsuit to recover the value of the work it was directed to do, plaintiff contends that it has a legal right, prior to complying with the Commissioner's direction, to a judicial determination as to its obligation to perform the work that it was directed to perform.

Plaintiff contends, and Special Term agreed in the judgment here appealed from, that the Commissioner was clearly wrong in his determination, that the issue is not "fairly debatable", and that under the rule set forth by the Court of Appeals in *Borough Constr. Co. v City of New York* (200 NY 149 [1910]), the plaintiff would accordingly have been unable to recover the value of the work it had been directed to do in accordance with the contract if it had performed the work as directed by the Commissioner.

As will be developed in detail hereafter, the opinion in *Borough Constr. Co. (supra)* provides no support whatever for refusing to enforce as contrary to public policy what have become standard provisions in city construction contracts that embody a now long-established policy judgment of the government of this city that disputes with regard to a contractor's scope of work should not be permitted to result in disruptive delays in completing what are often large multicontractor construction projects.

Moreover, if it were to be accepted that the rule set forth in *Borough Constr. Co. (supra)* was to be applicable even in the face of explicit contractual provisions directly to the contrary, the rule would be inappropriately applied here since the facts of this case disclose no basis whatever for the concern that led to the formulation of the rule.

Finally, assuming once again that the rule is applicable notwithstanding the provisions of the contract to the contrary, the issue presented with regard to the disputed work was here, in fact, "fairly debatable" within the meaning of that rule.

Plaintiff-respondent Kalisch-Jarcho, Inc., was awarded, on June 5, 1985, a contract in the sum of $999,547 for the plumbing work involved in the construction in The Bronx of a Department of Sanitation garage, broom depot, and salt storage building (the Project). At a meeting held that same date at the architect's office, prior to the subject being raised by anyone else, plaintiff's president, Marvin Kalisch, spontaneously asserted that plaintiff was not responsible for the excavation for, and installation of, concrete pads below the Project's underground fuel tanks. The city's representative and the architect responded that plaintiff was responsible under the contract for performing the work in question (hereafter the disputed work).

The procedure to be followed in the event of such a disagreement was explicitly addressed in article 27 of the contract, entitled "DISPUTED WORK, DETERMINATION OR ORDER":

"If the Contractor is of the opinion (1) that any work ordered to be done as contract work by the Commissioner [of the New York City Department of Sanitation], the Engineer or the Resident Engineer, is extra work and not contract work, or (2) that any determination or order of the Commissioner, Engineer or Resident Engineer violates the terms and provisions of this contract, he must promptly, and before proceeding with such work or complying with such determination or order, or simultaneously therewith notify the Commissioner in writing of the reasons for his opinion with respect thereto, and request a final determination thereon. Such determination shall be rendered within a reasonable time.

"If the Commissioner determines that the work in question is contract work and not extra work, or that the determination or order complained of is proper, he will so notify the Contractor to proceed, and the Contractor must promptly comply. However, in order to reserve his right to claim compensation for such work or damages resulting from such compliance, the Contractor must, within five days after receiving notice of the Commissioner's determination and direction, notify the Commissioner in writing that the work is being performed, or that the determination and direction is being complied with, under protest."

The contract further provides, in article 53, that after the contractor performs the work under protest, it has until one year after filing its final payment voucher to bring a lawsuit based on the protest work.

During a period extending from August through October of 1985, plaintiff, the architect, the architect's project manager, and the architect's engineering consultant essentially followed the "disputed work" resolution procedure set forth in article 27. By letter to plaintiff dated October 8, 1985, the Commissioner, after reviewing the relevant contractual provisions, and the opposing positions regarding responsibility for the disputed work, found it "clearly evident that the intent of the contract documents was to require the Plumbing Contractor to perform the subject items of work." The Commissioner's letter concluded: "It is the final determination of the Department that the excavation and slab installation for the fuel tanks is the responsibility of the plumbing contractor."

*Borough Constr. Co. v City of New York* (200 NY 149 [1910], *supra),* the authority relied upon by Special Term in declaring for plaintiff, was a breach of contract action brought by a sole contractor to recover the value of extra materials and labor expended in the construction of a sewer for the City of New York. The Court of Appeals expressed its concern that such actions might, through collusion, burden the municipality with liabilities never envisioned by a particular contract, in the following language (at 156): "While it has thus been established that a party may recover damages as for a breach of contract when he has been unlawfully required to furnish materials or do work not called for by his contract, I agree with the counsel for the appellant [city] that the principle unless restricted in its application may be made the source of grave abuse. While such an action theoretically seeks to recover damages as for a breach of contract, its real purpose is to secure compensation for extra work and a municipal representative and contractor might by collusion make the theory a ready method of saddling the municipality with extra work and materials which it never authorized and of burdening it with liabilities which it never contemplated."

After setting forth various considerations in favor of, and against, permitting recovery in such cases, the court set forth the general rule to be applied, as follows *(supra,* 200 NY, at 157): "These considerations seem to suggest the general rule that where the municipal representative, without collusion

and against the contractor's opposition, requires the latter to do something as covered by his contract, and the question whether the thing required is embraced within the contract is fairly debatable and its determination surrounded by doubt, the contractor may comply with the demand under protest and subsequently recover damages even if it turns out that he was right and that the thing was not covered by his contract, and, on the other hand, if the thing required is clearly beyond the limits of the contract, the contractor may not even under protest do it and subsequently recover damages. While this rule is only a general one and may not be determinative of every conceivable case, it seems to furnish a test by which to decide phases of the question which will ordinarily present themselves".

An examination of the facts set forth in this record immediately discloses legally dispositive differences between the circumstances here presented and those addressed by the Court of Appeals in *Borough Constr. Co. (supra)*.

First, and of broad public importance, it is apparent from the opinion of the Court of Appeals in *Borough Constr. Co. (supra)* that the contract in that case contained no clause addressing the problem presented where there is a dispute in the course of work between the responsible government official and the contractor as to whether or not certain work is part of the contractor's obligation under the contract and the government official has directed the contractor to perform the work. The principle is surely fundamental that a rule developed to govern a situation not addressed in the parties' contract does not ordinarily preclude parties from agreeing in a contract to resolve the problem in a different manner from the rule that would otherwise apply. Indeed, it is a matter of common experience that contractual provisions are frequently designed to alter a rule that would apply in the absence of such a provision.

In this case, in accordance with contractual provisions that have become standard clauses in New York City construction contracts, the parties agreed with regard to the procedure to be followed in the event of the kind of dispute that here developed. The contractor agreed that he would promptly comply with the determination of the Commissioner directing him to perform certain work, and the city agreed that the contractor would have the right to commence an action after the completion of the work to recover the value of that disputed work.

In refusing to give effect to these provisions in accordance with their plain meaning and clear intent, the court has in effect concluded that these provisions are unenforceable as contrary to public policy to the extent to which they apply to a dispute as to which the contractor claims, and the court finds, that the Commissioner's determination is clearly erroneous and not fairly debatable. But the Court of Appeals did not say in *Borough Constr. Co. (supra)* that such contractual provisions would be contrary to public policy, no such provisions having been presented to the court for its consideration. Accordingly, *Borough Constr. Co.* provides no support whatever for the conclusion reached by this court that the provisions in question are unenforceable under the circumstances presented as contrary to public policy.

And precisely what is the public policy that requires the striking down of the contractual provision in this case? The concern of the Court of Appeals in *Borough Constr. Co. (supra)*, sustaining the defense there interposed by New York City, was that collusive behavior between a public official and a private contractor might result in an unjustifiable addition to the liabilities of a municipality in connection with a construction contract. But in this case, some 75 years after the decision in *Borough Constr. Co.*, we are confronted with a now long-established policy judgment of the City of New York, almost certainly influenced by practical experience with the consequences of the city's successful defense in *Borough Constr. Co.*, that disputes with regard to a contractor's obligations under a construction contract should not be permitted to result in disruptive delays in what are often large multicontractor construction projects, and that the risks to be feared from unjustified increases in municipal liabilities are outweighed by the potential for disruption and delay inherent in allowing the contractor to refuse to perform work that the responsible Commissioner has determined is part of its contract. That policy judgment is reflected in an exchange of promises in which the contractor agrees without qualification to comply with the Commissioner's direction to perform disputed work and the city agrees without qualification to the contractor's right to bring an action for the value of the disputed work that it has performed. Whether we consider this policy determination right or wrong, it is surely a judgment that a municipality has the right to make. Particularly when we consider the vast experience that the government of this city has with regard to construction contracts, it seems to

me perplexing indeed for this court to intervene to strike down as unenforceable standard contractual provisions reflecting the judgment of the city as to its own best interests on the court's apparently contrary view of the city's interests.

The untenability of this approach becomes apparent if we were to consider the situation presented if the contractor had complied with its contractual agreement to perform the work that it had been directed to perform, and was suing for value of that work in accordance with the right specifically conferred in the contract. Is it conceivable that the city would have opposed such a suit on the ground that, although the work was in fact extra work, the determination of the Commissioner that the contractor perform the work was so clearly erroneous as to be not fairly debatable, and that the contractor therefore was wrong to comply with his contractual agreement to perform the work? It is surely highly improbable that the city, contrary to the policy embodied in its standard construction contracts, would ever interpose such a defense. And assuming the city were to take such a position, is there the slightest possibility in that eventuality that any court would sustain such a defense in the face of the city's explicit contractual agreement that a contractor who complies with the Commissioner's determination may sue to recover the value of disputed work?

The mischief sought to be avoided by the contractual provisions is obvious, and is illustrated by what occurred in this case. The very fact that a contractor refuses to comply with a direction to work, and commences a declaratory judgment action that may not be judicially resolved for months, if not years, confronts the city in every such case, *and wholly without respect to the merits of the Commissioner's determination of the issue,* with the unpalatable choice of accepting disruptive and expensive delays in the completion of the project, or making alternative arrangements under time pressures and in disadvantageous circumstances to have work done by another which the Commissioner found to be part of the contractual obligation of the contractor. Surely there was at a minimum a reasonable, if not indeed a compelling, reason for the city to have developed standard contractual clauses designed to avoid such disruptions and such delays, and there are compelling reasons for requiring contractors who agreed to such provisions to comply with their commitment.

As was cogently observed in *Shaw v City of New York* (Sup Ct, NY County 1981, Ostrau, J., index No. 21274-79): "In the

final analysis, the clear and unmistakable language of the contract establishes that defendant agreed to exchange the safeguards of having a court resolve disputes arising under the contract for the speed in having a final determination promptly made by the Commissioner. That agreement was made as part of a sophisticated transaction where the role and loyalties of the Commissioner were open and notorious. Under such circumstances the agreement is controlling and the plaintiff is barred under the terms of the agreement from asserting the cause of action."

This is not to say that there may not be circumstances in which the concerns referred to in *Borough Constr. Co. (supra)* would not justify denial of recovery to a contractor who performed disputed work in compliance with a direction to do so issued in accordance with the prescribed contractual procedures. Thus, denial of recovery would clearly be appropriate where the evidence established that the contractor and the responsible city officials in fact colluded either to enlarge the city's liabilities, or for some other clearly improper purpose. And wholly apart from the concerns referred to in *Borough Constr. Co.*, it is possible to envisage a situation in which the direction of the Commissioner is so irrational and arbitrary, and the effect of enforced compliance by the contractor so onerous and damaging to the contractor, that the result of compliance with the literal language of the contractual provisions would be unconscionable. That situation is not presented here.

The second significant circumstance distinguishing this case from *Borough Constr. Co. v City of New York* (200 NY 149, *supra*) is that the record here discloses no suggestion of a basis for the primary concern identified by the Court of Appeals in shaping the rule that it promulgated. There is here no possibility that collusion between a municipal representative and the plaintiff herein might burden the city with liabilities which it never contemplated, for it is undeniable that the disputed work in this case was clearly contemplated by the contracts covering the entire project. The sole question raised by the plaintiff is whether it, or the general contractor, was responsible for performing the excavation for, and installation of, the concrete pads below the Project's underground fuel tanks. There is not the slightest hint in plaintiff's declaratory judgment action of collusion, or of the possible creation of a liability never contemplated by the city in the construction of this large, integrated, multicontractor project.

Finally, and independently dispositive of the immediate issue presented, the plaintiff's obligation to perform the disputed work is here, in fact, "fairly debatable". On the one hand, items 1 (b) and 5 of a Separation of Work Between Contracts chart (contained in § 15400, para 1.11, of the plaintiff's contract) do indicate by the placement of the letter "P" in the general contractor's work column, that the disputed work is allocated to the Project's general construction contractor rather than to the plaintiff. On the other hand, section 15475 of the plaintiff's contract is comprised of almost six full pages of detailed requirements for excavation, backfilling, paving and concrete work to be performed by the plaintiff. Paragraph 1.01 (C) (1) (a) of section 15475 provides: "The work of this Section includes the excavation, backfilling, paving and concrete work for the complete execution of the work as indicated on the Drawings and specified herein, both inside and outside of the building."

The plumber's contract drawings P-9 and P-10 referred to above show in detail the concrete pads for the underground fuel tanks, and contain notes and diagrams which set forth the detailed requirements with respect to the excavation for, and installation of, the pads. It is significant that when work to be done by the general contractor appears on the plumbing drawings, it is labeled as such. This is demonstrated in a drawing detail of an oil interceptor on P-9, wherein the concrete floor adjacent to the cover for the oil interceptor is labeled "By General Contractor". The portion of the drawing showing the disputed work bears no such notation. It would thus appear to be at least "fairly debatable" that plaintiff's contract, containing specifications for the "excavation, backfilling, paving and concrete work for the complete execution of the work as indicated on the Drawings", when read together with the drawings which show the concrete pads for the underground fuel tanks with detailed requirements for the excavation for, and installation of the pads, may reasonably be construed to require plaintiff to perform the disputed work.

In this connection, the majority opinion points out that there are also two notations indicating that certain work in the oil interceptor is to be performed "by Plumbing Contractor", and argues that these notations would have been unnecessary if the city were correct in its contention that all work done on the plumbing drawings was intended to be performed by the plumbing contractor unless otherwise indicated on the drawings. A close examination of these notations on the

drawings discloses the error in this analysis. The cover and the watertight sleeves encasing the oil interceptor are specifically designated as the responsibility of the plumbing contractor on the drawing P-9, because they are contiguous to the concrete floor, which is specifically designated by an arrow, as the responsibility of the general contractor. Thus, the "Plumbing Contractor" notations on the drawings were apparently included to demarcate unambiguously where the general contractor's responsibility ends and the plumbing contractor's responsibility resumes. At a minimum, in terms of the "fairly debatable" standard, these notations are far less conclusive than suggested in the majority opinion.

It is pertinent to note that paragraphs 1.11 (B) and (C) of section 15400, upon which plaintiff relies as "clearly and undisputably" demonstrating that the disputed work was to be performed by the general contractor, provide as follows:

"B. In the absence of more detailed information, this list shall be taken as a specific instruction to this contract to include the work assigned to it.

"C. Indications that this Contractor is to perform an item of work means that he is to perform the work corresponding to this Contract only except as specifically noted otherwise."

Clearly, there exists an inconsistency in the work designated to the plaintiff in sections 15400 and 15475, but it is not at all clear that section 15400 takes precedence in such an event, and a reasonable argument has been advanced by the city, based on article 1, paragraphs (E) and (H), that in the event of a conflict between the drawings and specifications, it is the drawings, apparently allocating the disputed work to the plaintiff, which provide the assignment of responsibility contemplated by the contract when read as a whole.

When the relevant documents are looked at as a whole, it would seem quite clear, except for the placement of the letter "P" in the general contractor's work column referred to above, that the disputed work was intended to be performed by the plumber, and was a logical and appropriate part of the plumber's work. The possibility is surely presented that the placement of the letter "P" was an inadvertent error of a kind that from time to time occurs in the preparation of complicated and detailed documents. That such an inadvertent error does occur in contracts of the kind with which we are concerned is confirmed by article 1, paragraphs (E) and (H), which clearly contemplated the possibility of inconsistencies and ambiguities.

In making this observation, I do not suggest that the plaintiff might not have a meritorious position in a litigation that appropriately presented the issue for judicial consideration. I do believe that the issue is "fairly debatable", assuming, as I do not, that such a standard is here applicable.

For the reasons set forth above, the judgment of the Supreme Court, Bronx County (Barry Salman, J.), entered August 29, 1986, which declared that plaintiff is not contractually obligated to perform the work in issue, and which denied the city's cross motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs, to grant the city's cross motion for summary judgment to the extent of declaring that plaintiff is contractually obligated to comply with the Commissioner's determination as provided by article 27 of the contract.

MILONAS and KASSAL, JJ., concur with ROSENBERGER, J.; SANDLER, J. P., and ASCH, J., dissent in an opinion by SANDLER, J. P.

Judgment, Supreme Court, Bronx County, entered on August 29, 1986, affirmed, without costs and without disbursements.