OPINION OF THE COURT
Kaye, J.
This appeal centers on a New York City contract provision requiring a contractor during a construction project to perform disputed work directed by the City and postpone any claim for additional compensation until after completion of the work. While the contractor urges that this provision violates the public policy articulated in Borough Constr. Co. v City of New York (200 NY 149), which protects against collusive claims for extra work, we conclude that the concern expressed in Borough is inapplicable here. The contractual procedure for resolving disputed work claims should have been honored in this case, and the contractor’s midstream request for a declaration of contract rights during the project denied.
In March 1985, the City solicited bids for four prime contracts involved in constructing a new broom depot and salt storage building for the Department of Sanitation. Kalisch-Jarcho, with a bid of $999,547, received the plumbing contract. Separate contracts were awarded for the general construction work; the heating, ventilation and air conditioning; and the electrical work.
At a meeting the day Kalisch-Jarcho was awarded the plumbing contract — and even before contract-signing — a dispute surfaced regarding the concrete pads to be installed *730 below the underground fuel tanks. While Kalisch-Jarcho was required to install the tanks and concrete casing around them, at that meeting it expressed the view that the excavation for and installation of the concrete pads below the tanks was the responsibility of the general construction contractor; the City representatives replied that the responsibility was Kalisch-Jarcho’s. Shortly after work began, the project architect, relying on contract diagrams and other contract provisions, notified Kalisch-Jarcho that it was required to excavate for and install the concrete pads. After several fruitless exchanges, the matter was submitted for resolution to the Commissioner of the Department of Sanitation, pursuant to the procedure set forth in article 27 of the contract.[1] The Commissioner determined that it was "clearly evident that the intent of the contract documents was to require the Plumbing Contractor to perform the subject items of work”, and he directed Kalisch-Jarcho to proceed with the disputed work, adding that it could, by filing a written protest, preserve its right to claim additional compensation after contract completion.
The contractor, however, refused and instead commenced this action for a declaratory judgment that it was not contractually obligated to perform the disputed work. Citing Borough Constr. Co. v City of New York (supra), it pleaded that declara *731 tory relief was justified as the disputed work was clearly outside the contract and under Borough would therefore not be compensable even if performed under protest. In opposition to Kalisch-Jarcho’s motion for summary judgment, and in support of its own motion to dismiss, the City relied on article 27 of the contract, contending that even if declaratory relief could be sought for disputed work clearly outside the agreement, here the work was at least arguably within the contract. Both the project architect and the Commissioner had reasonably determined that the subject work was plaintiffs contractual responsibility, and that conclusion, in the City’s view, should be final and binding.
The trial court granted Kalisch-Jarcho’s summary judgment motion, concluding that it was not contractually obligated to perform the work before seeking judicial relief. The court found that the Commissioner was clearly wrong in his determination that the issue was at least fairly debatable, and that under Borough the contractor could not have recovered the value of the work had it complied with the Commissioner’s direction.
By a divided vote, the Appellate Division affirmed, holding that under Borough Kalisch-Jarcho was not required to perform the disputed work before seeking judicial resolution of the question whether the work was clearly beyond the limits of the contract (135 AD2d 262). While acknowledging that article 27 served an important public interest, the court nonetheless concluded that it failed to accord the City protection, as does Borough, against conspiracies between a contractor and a municipal employee to obtain payment for additional work not contemplated by contract. The court then agreed with the trial court that the disputed work was not Kalisch-Jarcho’s contractual responsibility, and that the contractor was not obligated to perform it. In dissent, the late Justice Leonard H. Sandler concluded that article 27 was not violative of Borough or the public policy that motivated it, and that the disputed work was not clearly beyond the contract but rather the subject of honest dispute (135 AD2d, supra, at 269). We are in essential agreement with the dissent, and now reverse.
A declaratory judgment action may be an appropriate vehicle for settling justiciable disputes as to contract rights and obligations (see, Matter of Public Serv. Commn. v Norton, 304 NY 522, 529; see also, Restatement [Second] of Contracts § 345, *732 comment d, at 107-108; 5 Corbin, Contracts § 991, at 4-5; 4 Williston, Contracts § 601, at 316-317 [3d ed]). But parties to an agreement may not seek a declaration of their contract rights when their agreement specifies a different, reasonable means for resolving such disputes (see, e.g., Rifkin v Rifkin, 118 NYS2d 322 [Sup Ct], affd 281 App Div 1035; 16 Williston, Contracts § 1919A, at 155-156). A declaratory judgment in. such circumstances may be unnecessary (see, Walsh v Andorn, 33 NY2d 503, 507; James v Alderton Dock Yards, 256 NY 298, 305), and could also enable parties to circumvent their contractual undertakings (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3001:14, at 364-365).
Article 27 of the contract delineates the agreed procedure to be followed for resolving disputes arising during the project as to whether certain work is or is not within the contract. When, as the last step in the process, the Commissioner determines that the disputed work is contract work and so notifies the contractor, the contractor has specifically undertaken an obligation to perform that work and postpone any claim for additional compensation until after contract completion. In view of the agreed procedure for resolving disputed work claims, and in view of the nature of the disputed work here, we conclude that the Appellate Division abused its discretion by affirming the declaratory judgment.
Kalisch-Jarcho does not contest the applicability of the contract provision to which it agreed, or argue that this was anything but an arm’s-length bargain between sophisticated parties (see, Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, 384). Nor does it dispute the City’s assertion that article 27 was designed to protect the public interest in avoiding costly, disruptive delays during public works projects. The nub of the contractor’s contention is that the contract provision cannot control because it violates the public policy articulated in Borough Constr. Co. v City of New York (supra). We disagree. The public policy concerns defined in Borough are not implicated here, and the contract should be honored.
In Borough, a contractor sought recovery for extra work and materials in the construction of a large sewer for the City of New York. The City engineer in charge ordered the contractor to lay a portion of the sewer in a more expensive cement than agreed, and also to furnish an elevator to lower automobiles into the sewer, clean up the sewer and illuminate it with *733 candles for what this court characterized as a "so-called inspection trip of the city officials”. (200 NY 149, 152, supra.) (Judge Learned Hand later described the work as making access "more genial for those attending the festivities incident to the opening” of the sewer [Todd Dry Dock Eng’g & Repair Corp. v City of New York, 54 F2d 490, 491 (2d Cir)].) The contractor protested that the order was outside the contract, but did as it was ordered and then sued.
The court first recognized that a contractor ordered by a municipal representative to furnish services or materials as covered by the contract, which the contractor believes are outside the contract, may under protest do as directed and later recover damages for breach of contract, even though it turns out that the contractor was actually right and the official had no right to call on it for such labor and materials (Borough Constr. Co. v City of New York, supra, at 153). Thus, as an abstract principle, the value of extra work — work that is ultimately found to be outside a contract — may unquestionably be recoverable by a contractor as breach of contract damages. But aware of the potential for abuse — municipal representatives and contractors collusively could saddle a municipality with uncontemplated liabilities — the court recognized a limitation on that principle: where the municipal representative’s demand is flagrantly beyond the scope of the contract, the contractor may not even under protest do the work and recover for it. Applying this test, the court concluded that the more expensive cement was work "not dreamed of by the parties” (id., at 153) and technically outside the contract, but because the engineer’s demand could be sustained under a literal interpretation of the contract, the contractor was justified in complying with the directive and could therefore recover for the work. By contrast, there could be no recovery for the other work because those demands were "so preposterous that there could be no reasonable doubt that [they] exceeded the obligations of the contract and that a refusal to comply with it would, not work a breach of contract.” (Id., at 158.)
The Borough test remains sound (see, e.g., Clark-Fitzpatrick, Inc. v Long Is. R. R. Co., 70 NY2d 382, 389; Weil Plumbing Corp. v State of New York, 294 NY 6; Seglin Constr. Co. v State of New York, 22 NYS2d 94 [Ct Cl], affd 262 App Div 782, rearg denied 262 App Div 797; see also, City & County of San Francisco v Transbay Constr. Co., 134 F2d 468, 473 [9th Cir], cert denied 320 US 749; Todd Dry Dock Eng’g & Repair Corp. *734 v City of New York, 54 F2d 490, 491, supra; 13 McQuillin, Municipal Corporations § 37.160, at 403 [3d rev ed]; 3 Yokley, Municipal Corporations § 444, at 42; 65 Am Jur 2d, Public Works and Contracts, § 188). Yet nothing in Borough detracts from application of article 27 in this case.
The first material distinction between this case and Borough may be characterized as procedural. The litigation procedure and the contract procedure here both differ from Borough. Borough was a breach of contract action brought after completion of the work, and the focus of the case was whether a contractor could recover at all for the additional work in a breach of contract action. The contract in Borough provided that the City engineer was to be the final, binding authority on all questions relating to the work, but it did not explicitly preserve the contractor’s right to claim compensation for extra work. Thus, the essential question in Borough was whether the contractor could sue the City for what it claimed was extra work; here the essential question is not whether but when.
On this very subject, moreover, the parties before us expressly agreed upon a step-by-step procedure which preserves the City’s bargained-for right to have a multicontractor project proceed to conclusion without actual or threatened costly litigation interruptions — the present action is already three years old — and at the same time preserves the contractor’s right to seek judicial resolution of claims for additional compensation for work it believes falls outside the contract.[2] As Justice Sandler observed, "[t]he principle is surely fundamental that a rule developed to govern a situation not addressed in the parties’ contract does not ordinarily preclude parties from agreeing in a contract to resolve the problem in a different manner from the rule that would otherwise apply. Indeed, it is a matter of common experience that contractual provisions are frequently designed to alter a rule that would apply in the absence of such a provision.” (135 AD2d, at 272, supra.)
A second significant distinction lies in the substance of the Borough test. Both in articulating the test and in applying it, *735 Borough drew sharp lines between what might be compensable though technically outside the contract, and what was so preposterous as to suggest collusion, bad faith or similar circumstances demanding protection of the public fisc. In the latter circumstances, according to Borough, a contractor would not be justified in doing the work, and would not be compensated for it; the contractor could only refuse to comply, though it might be subjected to "annoyance or even unjust litigation” for its refusal to obey the directive (Borough Constr. Co. v City of New York, supra, at 158; see also, Todd Dry Dock Eng’g & Repair Corp. v City of New York, 54 F2d 490, supra). Expensive cement — while technically beyond the terms of the contract — still fell within the range of the City’s apparent good faith, reason, doubt and debate, but the other work was so frivolous, so palpably and manifestly outside the contract, that there could not even be a reasonable doubt that the contractor would prevail in a breach of contract action if it refused to comply with the City’s directive. Collins v State of New York (259 NY 200) and Weil Plumbing Corp. v State of New York (294 NY 6, supra) are further applications of that same dichotomy; as illustrated by those cases, the public interest is protected by Borough’s requirement that the City’s directive be supported by an honest dispute over the terms of a contract, a fairly debatable question, color of right on both sides of the issue.
In the present case, the excavation for and installation of concrete pads below the underground fuel tanks was work shown on the contract drawings and undisputedly an essential part of the project; there is no question of saddling the municipality with unnecessary, uncontemplated costs arising from preposterous additions to a contract. The only dispute was whether that work fell to the general construction contractor or the plumbing contractor. From day one the City, relying on the contract drawings and other contract provisions, took the position that the work was Kalisch-Jarcho’s contractual responsibility, which was the judgment of the project architect and ultimately the Commissioner of the Department of Sanitation.
Circumstances can surely be imagined where the concerns articulated in Borough would preclude recovery by a contractor — for example, "where the evidence established that the contractor and the responsible city officials in fact colluded either to enlarge the city’s liabilities, or for some other clearly improper purpose.” (135 AD2d, at 275, supra.) And even apart *736 from the concerns expressed in Borough, it is conceivable that a directive to do disputed work could be "so irrational and arbitrary, and the effect of enforced compliance by the contractor so onerous and damaging to the contractor, that the result of compliance with the literal language of the contractual provisions would be unconscionable.” (135 AD2d, at 275, supra.) Such extraordinary demands were envisaged in Borough as situations where "there could be no reasonable doubt that [the demand] exceeded the obligations of the contract and that a refusal to comply with it would not work a breach of contract”, despite a risk of baseless litigation (200 NY, supra, at 158).
But this is plainly not such a case. The City’s direction to Kalisch-Jarcho to excavate for and install the concrete pads as embraced within the contract was not so preposterous, so manifestly beyond the limits of the agreement, as to suggest a threat to any public interest.
Finally, for much the same reason, we reject the contractor’s argument that, in ordering it to perform the work in question, City officials violated Administrative Code of the City of New York § 6-110 and article 25 of the contract, which prohibit the Commissioner from ordering extra work that would increase the price to be paid by more than 10% of the contract price. Those limitations apply only in the case of extra work orders and not, as here, where the Commissioner reasonably determines that the work was required by the contract.
Accordingly, the order of the Appellate Division should be reversed, with costs, and judgment granted in favor of the City declaring that Kalisch-Jarcho is obliged to comply with article 27 of the contract.
Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

. Article 27, "disputed work, determination or order”, reads:
"If the Contractor is of the opinion (1) that any work ordered to be done as contract work by the Commissioner [of the New York City Department of Sanitation], the Engineer or the Resident Engineer, is extra work and not contract work, or (2) that any determination or order of the Commissioner, Engineer or Resident Engineer violates the terms and provisions of this contract, he must promptly, and before proceeding with such work or complying with such determination or order, or simultaneously therewith notify the Commissioner in writing of the reasons for his opinion with respect thereto, and request a final determination thereon. Such determination shall be rendered within a reasonable time.
"If the Commissioner determines that the work in question is contract work and not extra work, or that the determination or order complained of is proper, he will so notify the Contractor to proceed, and the Contractor must promptly comply. However, in order to reserve his right to claim compensation for such work or damages resulting from such compliance, the Contractor must, within five days after receiving notice of the Commissioner’s determination and direction, notify the Commissioner in writing that the work is being performed, or that the determination and direction is being complied with, under protest.”
Additionally, article 53 of the contract provides that after the contractor performs the work under protest, it has until one year after filing its final payment voucher with the City’s Comptroller to bring a lawsuit based upon the protested work.

. Declaratory judgment actions were first introduced in New York after Borough, as section 473 of the Civil Practice Act (1921), which may well have provided an incentive for the contractual procedure set forth in article 27 delaying the resolution of disputed work claims until after contract completion.