[656 NYS2d 440]

In the Matter of Nyack Nursing Home, Appellant, v Michael Dowling, as Commissioner of Social Services of the State of New York, Respondent.

Third Department, April 10, 1997

APPEARANCES OF COUNSEL

*Seligson, Rothman & Rothman,* New York City *(Martin S. Rothman* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* Albany *(Lisa LeCours* of counsel), for respondent.

### OPINION OF THE COURT

WHITE, J. P.

Petitioner operates a residential health care facility and participates in the Federal/State Medicaid program (42 USC § 1396 *et seq.*). Under this program, residential health care facilities receive reimbursement for the services they provide to eligible patients in accordance with rates that are established on the basis of certain allowable costs (10 NYCRR 86-2.9 [a]). Sometime prior to 1986, the State Department of Health and/or Department of Social Services audited petitioner's reported Medicaid costs for the rate years 1972 through 1981.[1] One of the results of the audit was the reversal of certain liabilities carried on petitioner's books which had the effect of increasing the amount of its equity. Concomitantly, since return of equity is an allowable cost (10 NYCRR 86-2.10 [g]; 86-2.21 [e] [4]) it also increased petitioner's reimbursement rate. It is undisputed that the State paid petitioner the increased reimbursement rate through the 1981 rate year but has not paid the increased rate for the subsequent rate years. In a stip-

---

1. Effective April 1, 1983, the authority to audit residential health care facilities was transferred from the Department of Health to the Department of Social Services (L 1983, ch 83, §§ 9, 13).

ulation dated September 4, 1986, the parties recognized that petitioner was entitled to audit adjustments relating to return of equity. Insofar as relevant here, the stipulation provides that "said adjustments [are] to be incorporated in Social Service audits of [petitioner] for the rate years 1982 and subsequent thereto if and when audits are performed".

In 1987, respondent conducted an audit of petitioner's Medicare Part B receipts for the 1984 and 1985 rate years.[2] Following the audit, respondent determined in 1992 that petitioner had received $45,500 in Medicaid overpayments due to its receipt of duplicative Medicare Part B payments. Petitioner responded that this audit triggered the provisions of the stipulation and, thus, it was not indebted to respondent as the adjustments due it for its return of equity exceeded $45,500. Respondent disagreed, claiming that the stipulation could only be triggered by a rate reimbursement audit and not by a Medicare Part B audit. This issue was submitted to an Administrative Law Judge (hereinafter ALJ) who agreed with respondent's position. He pointed out that the stipulation provides that the return of equity adjustment was to be made in future "Social Service audits for the rate years 1982 and subsequent". In his view, since "rate" is a technical term meaning aggregate governmental payment to facilities (10 NYCRR 86-2.10 [a], [b]), the stipulation necessarily refers only to rate reimbursement audits as they are the only ones that encompass all of the component parts of the government's aggregate payment to the facility. He also concluded that, inasmuch as the return of equity issue is not related to the issue of duplication of payments between Medicaid and Medicare Part B, he could not consider it in the context of the subject hearing (18 NYCRR 519.18 [a]).

Petitioner then commenced this combined CPLR article 78 proceeding and declaratory judgment action seeking, *inter alia*, a judgment annulling the ALJ's determination along with a declaration of its contractual rights under the stipulation. Supreme Court, finding that the ALJ's determination had a rational basis, dismissed the CPLR article 78 petition and denied petitioner's request for declaratory judgment relief. This appeal ensued.

We shall first consider the propriety of Supreme Court's dismissal of petitioner's CPLR article 78 petition. As there was no

2. Medicare Part B is a supplementary medical insurance program for aged and disabled persons that is financed from premium payments by the enrollees and the Federal Government (42 USC § 1395j).

evidentiary hearing, the appropriate standard of review is whether the ALJ's determination was arbitrary and capricious in that it lacked a rational basis (see, *Matter of County of Monroe v Kaladjian*, 83 NY2d 185, 189; *Matter of Pell v Board of Educ.*, 34 NY2d 222, 231). We have no difficulty in finding that the challenged determination was supported by a rational basis in that 18 NYCRR 519.18 (a) clearly limited the ALJ's review to the correctness of respondent's Medicaid overpayment computation. We also concur with his interpretation of the stipulation. We would further note that the parties could only have intended that a rate reimbursement audit would be the triggering event since rate underpayments disclosed by an audit can only be satisfied by adjusting the provider's rate which is not finally determined until an audit has been performed and completed (10 NYCRR 86-2.7 [a], [g]). For these reasons, we affirm Supreme Court's dismissal of the CPLR article 78 petition.

Turning to the declaratory judgment action, Supreme Court should not have summarily denied petitioner this relief because such an action is an appropriate vehicle for settling justiciable disputes pertaining to contract rights and obligations (see, *Kalisch-Jarcho, Inc. v City of New York*, 72 NY2d 727, 731; *Abate v All-City Ins. Co.*, 214 AD2d 627, 629; *Matter of Hertz v Rozzi*, 148 AD2d 535, 536, *affd* 74 NY2d 702). Here, the focus of the parties' dispute is respondent's contention that, by providing in the stipulation that the adjustments would be made "if and when audits are performed", the parties acknowledged that respondent has no obligation to conduct a rate reimbursement audit and that its timing is wholly within its discretion. Petitioner contends that this construction of the stipulation is irrational and renders it illusory, as it permits respondent to avoid making the adjustments for the return of equity by simply failing to perform a rate reimbursement audit. Accordingly, it argues that respondent should be directed to abide by the stipulation and that this matter should be remanded to respondent with a direction to conduct the requisite audit.

Generally, although Social Services Law § 368-c (2) requires respondent to conduct an on-site audit of residential health care facilities at least once every four years, a provider is not entitled to an order directing an audit (see, *Matter of Mercy Health & Rehabilitation Ctr. v Dowling*, 233 AD2d 901, 902). This case differs from the usual circumstance in that respondent has contractually recognized that petitioner is entitled to

audit adjustments relating to return of equity and has agreed to a procedure for effecting such adjustments. Implicit in every contract is an implied covenant of good faith and fair dealing which embraces a pledge that " 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract' " (*Dalton v Educational Testing Serv.*, 87 NY2d 384, 389, quoting *Kirke La Shelle Co. v Armstrong Co.*, 263 NY 79, 87; *see, Van Valkenburgh, Nooger & Neville v Hayden Publ. Co.*, 30 NY2d 34, 45, *cert denied* 409 US 875). In our view, respondent's failure to conduct a rate reimbursement audit of petitioner for over 15 years raises a substantial issue as to whether it has breached this implied covenant of good faith. Accordingly, we shall remit this matter to Supreme Court for the purpose of conducting a prompt hearing on this issue. In the event that the evidence adduced therein establishes that respondent breached the covenant, Supreme Court should issue an appropriate declaration and direct respondent to undertake the appropriate audit within a reasonable time.

CASEY, PETERS, SPAIN and CARPINELLO, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as denied petitioner's request for declaratory relief; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.