D.G. v M.G. (2024 NY Slip Op 50741(U))

[*1]

D.G. v M.G.

2024 NY Slip Op 50741(U)

Decided on June 17, 2024

Supreme Court, New York County

Chesler, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 17, 2024
Supreme Court, New York County

D.G., Plaintiff,

against
M.G., Defendant.

Index No. 300323/2017

Counsel for Plaintiff
Lefkowicz Law, PLLC
90 Broad Street, Fl 2
New York, NY 10004
By: Mark Ira Lefkowicz, Esq. & Beth L. Rosner, Esq.
Counsel for Defendant
Chemtob Moss Forman & Beyda, LLP
527 Madison Ave, Fl. 7
New York, NY 10022
By: Susan Melissa Moss, Esq. & Alexis Maren Wolf, Esq.
Counsel for the Child
LoPreto + Levy, LLP
565 Fifth Avenue, Fl. 7
New York, NY 10017
By: Virginia A. LoPreto, Esq.

Ariel D. Chesler, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 66, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78 were read on this motion to/forMODIFICATION OF CUSTODY.
In this post-judgment custody modification action, Plaintiff, D.G.(hereinafter: the Father) moved by Order to Show Cause seeking this Court modify the parties' Stipulation of Settlement so as to allow the Father to have more parenting time with the parties' child, J.G., (hereinafter: the Child) and counsel fees. (NYSCEF Doc. No. 3, 11). Defendant, M.G.(hereinafter: the Mother), cross-moved seeking inter alia counsel fees and enforcement of various provisions of the Stipulation of Settlement. (NYSCEF Doc. No. 12).
The Court appointed Virginia LoPreto, Esq. to be attorney for the Child, who submitted an affirmation in response to the parties' competing motions. (LoPreto Affm. [NYSCEF Doc. No. 66]).
BACKGROUND
The parties were previously married and subsequently divorced by Stipulation of Settlement dated August 9, 2017. The Stipulation of Settlement was incorporated but did not merge with the parties' Judgment of Divorce. Within the parties' Stipulation of Settlement, the parties share joint legal custody with equal decision-making authority. (Father's Ex. 1 at 10 [NYSCEF Doc. No. 6]).
As to parenting time, the Stipulation provided for a complex parenting time schedule that altered based upon the age of the Child. (Id. at 11-13). Until the Child was five years old, the Father was under an alternating parenting time schedule. For the first set of weeks, the Father enjoyed a Tuesday Dinner visit and Friday to Sunday overnights with the Child. (Id. at 11-12). On the alternating week, the Father enjoyed a Tuesday and Thursday dinner visit and a Friday to Saturday overnight visits. (Id. at 12). Outside of those times, "the [Mother had] parenting time with the Child." (Id. at 11).
Once the child turns age five, the parenting time schedule altered. Notably, the Father's parenting time changed. On his first set of weeks he had a Tuesday and Thursday Dinner visit and Friday to Monday overnights with the Child. (Id. at 12). On the alternating weeks, the Father enjoyed a Tuesday and Thursday dinner visit. (Id. at 12-13). The Mother maintained her parenting time whenever the Child was not with the Father as prescribed in the Stipulation.
The parenting time provisions likewise provided for a robust and detailed holiday and summer vacation access schedule. (Id. at 13-19). Moreover, the Stipulation provided that, "[t]he Father shall comply with Court Orders regarding therapy. . .". (Id. at 22).
In addition to custody and parenting time, the parties' Stipulation provided for child support, add-on expenses and life insurance requirements to ensure the Child's needs were secured in the unfortunate event of the Father's death. (Id. at 27 — 29, 32, 34-36). The add-on provisions required the Father to be responsible for "agreed upon" extracurriculars and other expenses incurred for the benefit of the child, including but not limited to, unreimbursed medical expenses and other "ancillary costs." However, the agreement makes clear that the Father is not responsible for the costs incurred in relation to "bilingual French school" which the Mother assumed full responsibility for. (Id. at 31).
In relation to life insurance, the Father was required to hold and deliver to the wife a life insurance policy in the amount of $500,000.00 for the Mother's irrevocable benefit until her death and thereafter for the irrevocable benefit of the Child. (Id. at 34).
The parties' Stipulation likewise contained a "default provision" which provided for a protocol that provided a parent in default shall be responsible for the non-defaulting parent's legal fees incurred in connection with an application made to enforce the provision of the Stipulation. (Id. at 50).
During the pendency of the proceeding, the parties entered into a limited Stipulation in relation to the Father's parenting time that was So-Ordered by this Court. (So-Ordered Stipulation [NYSCEF Doc. No. 67]). Within the So-Ordered Stipulation the parties agreed to a modification of the Father's parenting time and a direction that the Father ensure the child is fed and has his homework completed prior to being returned to the Mother. (Id.). This So-Ordered Stipulation remains in full-force and effect.
The Father argues that he should be granted more parenting time based upon the alleged change in circumstances. Specifically, he claims his changed employment affords him a more flexible work schedule. In addition, he also states his relocation to New Jersey because of COVID-19 is another change in circumstance. (Father's Aff. at ¶¶ 3 [NYSCEF Doc. No. 4]). Based upon these changes, the Father requested "additional time over the weekends, summer, and vacations." (Id. at ¶ 19). Within his moving papers the Father further argues that the current iteration of the Stipulation was creating conflict and was being used by the Mother to "deprive [him] of parenting time which ultimately is determinantal to [the Child.]" (Id. at ¶ 32).
The Mother vigorously opposes this application. In the first instance she argues that the Father's application must be denied in its entirety because it is fatally procedurally defective for being filed as a motion rather than a plenary action. (Mother's Affm. at ¶¶ 2-4). Moreover, she argues that there is in fact not a sufficient change in circumstances to warrant a modification of custody. (Id. at ¶¶ 5-16). The Mother argues that even if there was a change in circumstances a modification of parenting time would not be in the Child's best interest based upon her allegation that the Father has engaged in emotional and "at times" physical abuse against the Child. (Mother Aff. at ¶¶ 10-16). The Mother offers writing by the child, a recording transcript, and photographs of the Child and his living condition as the Father's house to support these arguments. (Mother's Ex. B, C, D [NYSCEF Doc. Nos. 16-18]).
The Mother cross moves and seeks many points of relief including, inter alia, enforcement of the Stipulation's life insurance and add-on provisions and for an award of counsel fees. She argues the Father must engage in therapy as directed under the Stipulation and that the Father owes $12,559.00 in support arrears for extracurriculars, ancillary costs, health insurance costs, and unreimbursed medical expenses. (Mother's Aff. at ¶¶ 52-54). She further argues that the Father failed to comply with the Life Insurance provisions based upon the Father never providing the Mother proof of such life insurance as required under the parties' Stipulation. (Id. at ¶ 55).
In reply to his Order to Show Cause and opposition to the cross-motion, the Father argues the Mother is mistaken in her argument that his application is fatally procedurally defective because he is seeking a modification rather than seeking to set-aside or vacate the Stipulation. (Father's Reply Affm. at ¶¶ 4-13). He further contends that he has shown a sufficient change in circumstances and otherwise opposes the remaining relief requested by the Mother. He specifically contends the Mother has failed to meet her burden as to producing legal authority to support her requests for (i) having the Court review a previous custody evaluation; (ii) having the Court listen to a recording of the Child; (iii) modifying the pick-up and drop off location; and (iv) modifying drop off times. (Id. at ¶ 27).
The Mother, in reply to her cross-motion, argues both that the Court should review the former forensic report only if this Court proceeds on the application despite the alleged procedural defects. (Mother's Reply Affm. at ¶¶2-4). Further, she contends that counsel fees are warranted because the Mother complied with the Default Provisions of the parties' Stipulation and that the Father's papers failed to include adequate invoices.
The Attorney for the Child submitted an affirmation and opposed the Father's request for expanded parenting time. (LoPreto Affm. at 3 [NYSCEF Doc. No. 66]).
DISCUSSION
I. The Father's Application is Not Procedurally Defective
The Mother's contention that the Father's application is procedurally defective is without [*2]merit. Indeed, the Mother's papers themselves seek a modification of parenting time provisions and commit the same alleged fatal mistake as the Father — not commencing a plenary action and instead moving by order to show cause for post-judgment relief. Regardless, the law on the issue is clear, a party may not "reform the parties' separation agreement by way of motion." (Scalabrini v Scalabrini, 242 AD2d 725, 726 [2d Dep't 1997]). The authority relied on by the Mother equally supports this conclusion. While the decision in Sudaka-Karlsson v Karlsson, is limited in explanation, inquiry into the cases with which that decision rests upon confirms that the Mother's position is without merit. (97 AD3d 737 [2d Dep't 2012]). Karlsson, relied on three cases in denying the motion on the basis that it should have been brought by way of plenary action. (Id. at 737). It relies first on Weissman v Weissman, which held a plenary action was needed where the movant sought to "vacate the stipulation of settlement." (68 AD3d 981, 982 [2d Dep't 2009]). Likewise Karlsson relies on the previous holding in Reiter v Reiter, which held, that plenary action was needed where there was a "challenge to a stipulation of settlement." (39 AD3d 616, 616 [2d Dep't 2007]). Finally, the third case Karlsson rests its holding on is Spataro v Spataro, which held a plenary action as necessary to "seek[] vacatur or reformation of the agreement." (268 AD2d 467, 468 [2d Dep't 2000]). Thus, the line of authority relied upon by the Mother is readily distinguishable from the motion at-bar. Here, the Father is seeking a modification; he is not challenging the validity or otherwise seeking to set-aside the underlying stipulation of settlement. Accordingly, the Court finds the Father's motion was an appropriate avenue to request a modification of custody.
II. The Father Has Failed to Show a Sufficient Change in Circumstances
"When parents enter into an agreement concerning custody, it will not be set aside unless there is a sufficient change in circumstances since the time of the stipulation and unless the modification of the custody agreement is in the best interests of the child." (Trimarco v. Trimarco, 154 AD3d 792, 793 [2d Dep't 2017] quoting Matter of Fargasch v Alves, 116 AD3d 774, 775 [2d Dep't 2014]). For a movant to succeed on an application for a modification of custody they must pass two hurdles. First, that there is a change in circumstances that warrants a modification of custody. Second, that such modification is in the child's best interests. The movant cannot reach the second hurdle without passing the first. (See Matter of Kevin F. v Betty E., 154 AD3d 1118, 1119-1120 [3d Dep't 2017]["In other words, a court may consider a child's best interests only if this threshold burden is met."]). This case is one where the first hurdle was not passed.
The change in circumstances threshold question is a necessary judicial safeguard to avoid subjecting families to unnecessary litigation and the ordeal of a hearing on the sensitive issue of custody. The First Department shares in the understanding that the change in circumstances requirement guards against unnecessary and often traumatic experience that defines custody modification proceedings. (See David W. v. Julia W., 158 AD2d 1, 6-7 [1st Dep't 1990])]["To automatically grant the noncustodial parent a hearing would simply facilitate a disgruntled party in harassing his or her former spouse, compelling the latter to expend considerable time, money and emotional anguish in resisting the loss of custody. Certainly, a person who seeks such a change must make some evidentiary showing to warrant a hearing."]). Here Father's failure to meet this threshold showing demonstrates additional modification litigation would be of no benefit and merely result in further costs and emotional exhaustion for this family.
The change in circumstances the Father advances, namely, a new residence and a new job are simply insufficient to warrant a modification of this Child's custody under these [*3]circumstances.
The Father's voluntary move to New Jersey is not a sufficient change in circumstance. (See Jacobson v. Jacobson, 222 AD3d 847 [2d Dep't 2023][Affirming denial of modification of custody without a hearing based on movant's relocation]). The Father's access with the Child after the move (which has been seen during the course of this litigation) has been maintained. The arguments against the modification by the Attorney for the Child specifically as they relate to the to moves strain on the child due travel further counsels against the disruption that comes with a modification of custody. Surely, the already increased travel stress placed on the Child by the Father's voluntary move would only be exacerbated by granting the Father's relief as it would result in the Child even more frequently moving back and forth between homes. Stability for the Child despite his parents being two different homes demonstrates further the circumstances advanced by the Father are not sufficient to warrant a modification.
Likewise, the Father's new employment, while it does loosen the Father's work schedule, does not do so to such a point that it shows a change in circumstances appropriate to consider a modification of parenting time. (See e.g., Matter of Soumare v. White, 214 AD3d 992, 992[2d Dep't 2023][Affirming denial of modification where "the father filed a petition to modify the order [. . .] so as to award him parental access midweek due to alleged changes to his work schedule."]; Matter of Kenneth N. v. Elizabeth O., 209 AD3d 1133 [3d Dep't 2022][Holding movant's work schedule change did not constitute a change in circumstances]; B.C. v A.C., 80 Misc 3d 1213[A][Sup Ct, NY Cnty 2023][Chesler, J.][Holding flexible work hours for a parent did not amount to a substantial change in circumstances]; W.D. v L.P., 2020 NY Misc. LEXIS 8005, at *5, 2020 WL 6481616, at *5 [Fam Ct, Kings Cnty October 29, 2020][Waksberg, J.]["The Father's change in job and work schedule do not constitute a change in circumstances which require modification to further the best interest of the child."]; compare with, Matter of Jennifer VV. v Lawrence WW., 186 AD3d 946, 949 [3d Dep't 2020][Finding sufficient change in circumstances where parent became a stay-at-home parent]). The papers presented to this Court command this conclusion as nowhere does the Father actually explain his new work schedule nor provide an exhibit of his new schedule. While he asserts that it permits him more time to spend with the Child, a self-serving assertion combined with the circumstances herein do not demonstrate a significant change in circumstances. 
The Court is cognizant of the conflict between these parties; however, under these circumstances it does not meet the substantial change in circumstances requirement. (See Foley v Foley, 52 AD3d 773, 774 [2d Dep't 2008][Holding conflict between parents did not constitute a substantial change in circumstances.]).
Additionally, the Father already has a liberal parenting time schedule and shares joint-custody of the subject child. The Court is "not insensitive to the warm and close relationship existing between the father and the child[]. Fortunately for the child[], as well as the father, the original custody decree grants liberal visitation rights to the father which should provide for a further development of the existing relationship." (Dintruff v. McGreevy, 34 NY2d 887, 889 [1974]).
Accordingly, as the Father has failed to demonstrate a sufficient change in circumstances to trigger a best interests inquiry his request for a modification of custody is DENIED.
III. The Mother's Requests for Modifications of Parenting Time and Custody
The Mother makes numerous requests to have custody and parenting time modified but [*4]provides no basis for the court to afford such relief. Her papers fail to allege a change in circumstances just as the Father's did. Her affirmation likewise fails to supply legal authority to support a modification request. Indeed, it seems these requests for relief are masqueraded as non-modification requests when in-fact that is exactly what they are. Accordingly, the Mother's requests to modify decision-making as it relates to camp enrollment, a direction to have the Father participate in anger management, to change telephone access, summer vacation, to change drop-off and pick-up locations, and to alter the Sunday access schedule are DENIED, except to the extent the parties have now agreed to do so.
IV. The Mother's Cross-Motion for Enforcement of the Stipulation's Provisions
"A stipulation of settlement which, like the one at issue here, is incorporated but not merged into a judgment of divorce, is a contract subject to the ordinary principles of contract construction and interpretation." (Keller-Goldman v Goldman, 149 AD3d 422, 424 [1st Dep't 2017]). "A stipulation of settlement is a contract, enforceable according to its terms. When a court enforces a stipulation of settlement, it must effectuate the parties' intent. As with any contract, where the terms of a stipulation of settlement are unambiguous, the Supreme Court must give effect to the parties' intent based upon the plain meaning of the words used by the parties." (Stein v Stein, 130 AD3d 604, 605 [2d Dep't 2015]).
The Mother contends the Father has failed to comply with three provisions of the Stipulation, namely, the therapy, add-on, and life insurance provisions.
With regards to life insurance requirements, the Stipulation provides,
The Husband agrees to maintain and keep in full force and effect insurance on his life having an aggregate death benefit of Five Hundred Thousand Dollars [sic] ($500,000.00) which shall be for the irrevocable benefit of the [Mother] until her death and thereafter for the irrevocable benefit of the Child. The Husband shall maintain such life insurance policy for as long as the Husband is required to pay child support pursuant to the Courts Orders. Promptly after the execution and delivery of this Agreement, the Husband shall deliver to the Wife such insurance policy or policies or a certificate or other instrument evidencing such irrevocable designation of the Wife and the Child as beneficiaries of said insurance, and the Husband shall execute and deliver all forms, instruments and documents which may be required and which may be appropriate or suitable so that the Wife and the Child shall be such irrevocable beneficiaries to the extent hereinbefore set forth.
(Father's Ex. A. at 34 [NYSCEF Doc. No. 6]).
The Mother contends the Father failed to comply with this provision as he did not "provide her with proof" of the health insurance. This was even after the Mother provided the Father with a default letter which specifically delineated such default. The Father offers proof of life insurance to the Mother's demand. (Father's Ex. 9 at D [NYSCEF Doc. No. 46]). Accordingly, the Mother's request to have the Stipulation's Life Insurance Provisions enforced is DENIED.
Outside of Life insurance, the Mother also contends the Father has failed to pay his share of add-on expenses related to the Child. The Mother offers a detailed accounting, with receipts, for the add-on expenses sought in her Default Letter dated April 8, 2022. (Mother's Ex. P [NYSCEF Doc. No. 30]). In response to this, the Father offers a response he provided in [*5]response to the Default Letter. (Father's Ex. 9 [NYSCEF Doc. No. 46]). The parties' Stipulation provides,
Pursuant to the Court Orders, the Father affirms that the cost of any child care services shall be paid for according to the parties pro rata share of combined parental income. Pursuant to the Court Orders, the Father affirms that the parties shall pay for nay and all costs for mutually agreed upon extracurricular activities, including but not limited to, expenses for summer camps and sporting activities, according to the parties pro rata shares of combined parental income. Agreement to such expenses not to unreasonably withheld. Pursuant to the Court Orders, the Father affirms that ancillary costs, including, but not limited to, to cost of mandatory school materials, teachers' gifts, school outings, etc., shall be paid according to the parties pro rata shares of the combined parental income. Pursuant to the Court Orders, the Father affirms that, in order to determine each party's respective share of the combined parental income for purposes of paying thee expenses set forth in paragraphs 3, 4 and 5 of this Article, the parties shall exchange verification of their annual income (i.e., by exchanging W-2s and/or 1099s for the previous year) on or before the 15th of April of each year going forward. To facilitate payment of said expenses, the parties will exchange information and copies of receipts/bills via email or through Our Family Wizard and the parent who woes his/her share to the other will make payment within three (3) business days of receipt of the bill. Payment can be via check, Paypal or Venmo. . .
The Husband shall maintain in full force and effect present medical and hospitalization insurance for the benefit of the Child for so long as the Husband is required to pay child support pursuant to the Court Orders. In the alternative, the Husband shall reimburse the Wife for One Hundred (100%) Percent of the cost of maintaining medical and hospitalization insurance for the benefit of the Child. The Wife shall cooperate to facilitate payment and reimbursement to the Husband by the insurers for any medical expenses paid by the Husband pursuant to paragraph 2 of this Article XI. The Husband shall promptly pay Seventy (70%) Percent and the Wife shall promptly pay Thirty (30%) Percent for all reasonably required prescription drug, medical, ophthalmological (including prescription eyeglasses), dental, surgical, nursing and hospital expenses incurred for the Child for as long as the Husband is required to pay child support pursuant to the Court Orders.
(Father's Ex. A at 27-28, 32 [NYSCEF Doc. No. 6]).
The issue herein (related to all expenses outside of medical expenses) is the language of the agreement is clear as to how to calculate the father's pro-rata share but both parties failed to comply with the protocol set forth for establishing a pro-rata share.
The Mother's Demand Letter dated April 8, 2022, was made with a demand for 50% of the costs; however, there was no annual calculation provided to support this conclusion that the Father holds 50% of the share of the expenses. Indeed, the terms of the Stipulation are clear that both parties must participate in the income document exchange to establish pro-rata shares which are necessary to ascertain the amount owed and due. Here, the parties failed to exchange this income information as prescribed in the agreement. Accordingly, the Mother's request for reimbursement for expenses incurred outside of medical costs must be DENIED as there was no [*6]clear language indicating the Father's pro-rata share. The Mother's imputation of a 50% pro-rata share does not conform with the terms of the agreement. Likewise, the Mother failed to adequately provide invoices to the Father and unreasonably delayed (some claims reaching back eight [8] years) making demand for repayment of these sums. (Father's Aff. at ¶¶47-58 [NYSCEF Doc. No. 36]; Father's Ex. 9 [NYSCEF Doc. No. 46]).
In relation to medical insurance, the Mother admits that the Father has paid his share of the medical insurance. (Mother's Aff. At ¶ 52 [NYSCEF Doc. No. 13]). Also, the Father paid the outstanding unreimbursed medical expense. (Father's Ex. 9 [NYSCEF Doc. No. 46]). Accordingly, the Mother's request for reimbursement of medical expenses is DENIED.
Finally, the Mother contends the Father is in breach of the agreement for failing to enroll in therapy. The Stipulation provided, "[t]he Father shall comply with Court Orders regarding therapy, including in particular the so-ordered Stipulation Re Parenting Matters dated May 9, 2016 (Exhibit E)." (Father's Ex. 1 at 22 [NYSEF Doc. No. 6]). Exhibit E of the Stipulation, as it relates to therapy, provides, "Husband shall complete his current therapy/anger management sessions as mentioned in Dr. Bow's report." (Id. at Ex. E at 4). The Father provided proof that he had complied with the Therapy Provisions dated July 12, 2016. (Father's Ex. 7 [NYSCEF Doc. No. 44]). Accordingly, the Mother's request to enforce the provisions of the Stipulation as they relate to the Father's therapy enrollment is DENIED.
V. The Parties Respective Requests for Counsel Fees
Domestic Relations Law section 238 generally governs the award of counsel fees in modification and enforcement proceedings. It provides, "the court may in its discretion require either party to pay counsel fees and fees and expenses of experts directly to the attorney of the other party to enable the other party to carry on or defend the action or proceeding as, in the court's discretion, justice requires having regard to the circumstances of the case and of the respective parties." (Id.). 
However, with regards to the Father's breach of the Stipulation of Settlement, "[w]here the parties have agreed to provisions in a settlement agreement that govern the award of attorney's fees, the agreement's provisions, rather than statutory provisions, control." (Roth v Roth, 116 AD3d 833, 834 [2d Dep't 2014]). So long as the contractual requirements of the default provision are met, this Court must award the Mother legal fees per the terms of the Stipulation. (See Szekely v Szekely, 73 AD3d 1158, 1159 [2d Dep't 2010] ["Contrary to the determination of the Supreme Court, the defendant is entitled to be reimbursed for 'necessary and reasonable' attorney's fees in connection with this proceeding pursuant to the default provision in the parties' settlement agreements."]). 
The Stipulation's Default Provision provides,
In the event that either party defaults with respect to any obligation under this Agreement and said default is not remedied within fifteen (15) days after sending a written notice by certified mail to the defaulting party specifying such default, the defaulting party agrees to indemnify the other party or reimburse such other party for any and all expenses, costs and attorney's fees and disbursements resulting from or made necessary by the bringing of any suit or other proceeding to enforce any terms, covenants or conditions of this Agreement to be performed or complied with by the defaulting party or to enforce any of the other party's rights to recover any amount to be paid to him or her by the defaulting [*7]party pursuant to this Agreement, provided such suit or other proceeding results in a judgment, decree or order in favor of the party seeking to enforce said indemnity.
(Father's Ex. 1 at 50 [NYSCEF Doc. No. 6]).
Herein, the Mother did not succeed in her claim as noted above and cannot prevail under the contract for counsel fees.
The parties each brought unsuccessful applications in this matter and many of the arguments raised in both parties' papers were not relevant to the legal issue before the Court. For instance, the Mother raised a procedural argument that was wholly without merit. Likewise, the Father's request for modification, as thoroughly detailed above, lacked merit. Accordingly, the parties' respective applications for legal fees are DENIED.
CONCLUSION
Based upon the foregoing it is hereby:
OREDERED, that the Father's Order to Show Cause (MSN 001) is DENIED in its entirety; and it is further
ORDERED, that the Mother's Cross-Motion (MSN 001) is DENIED except to the extent it requests denial of the Father's Order to Show Cause.
This constitutes a decision and order of this Court.
DATE 6/17/2024
ARIEL D. CHESLER, J.S.C.