C.J.O. v C.C.R. (2024 NY Slip Op 51659(U))

[*1]

C.J.O. v C.C.R.

2024 NY Slip Op 51659(U)

Decided on November 27, 2024

Supreme Court, New York County

Chesler, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 27, 2024
Supreme Court, New York County

C.J.O., Plaintiff,

against
C.C.R., Defendant.

Index No. XXXXX

Counsel for Plaintiff:
Aronson Mayefsky & Sloan, LLP
12 East 49th Street, Floor 32
New York, NY 10017
By: Reid A. Aronson, Esq.
Counsel for Defendant: 
Cohen Clair Lans Greifer & Simpson LLP
919 Third Avenue, Floor 34
New York, NY 10022
By: Shannon Rogers Simpson, Esq. & Jenna R. Weinblatt, Esq.

Ariel D. Chesler, J.

In this post-judgment action, the Father moves by order to show cause for an order directing reimbursement of various add-on expenses, a declaration that the Mother is responsible for the parties' children's college tuition, enforcement of the life insurance provision of the agreement, and an award of counsel fees. The Mother cross-moves and argues the Father is in breach of the parties' Stipulation and that as a result of that breach, she suffered damages that are equal to the sums sought to be recovered by the Father.
 BACKGROUND
The parties entered into a comprehensive marital settlement agreement that provided, inter alia, the parties share joint legal and physical custody. The joint custody provisions require the parties to consult with one another regarding major decisions related to the Children; however, there is no tie-breaking mechanism, and if disagreement results, the parties are required to give "meaningful consideration" to relevant professionals' input related to the major [*2]decision.
Separate from the custody provisions, are the child support add-on provisions. The add-ons provision is unequivocal and provides, "[t]he mother shall pay one hundred percent (100%) and the Father shall pay zero percent (0%) of the following add-on expenses for the Children [. . . ] tutoring through graduation from secondary school; [and . . . .] extracurricular activities and lessons; and organized summer programs or activities." Critically, there is no requirement that before the Mother is financially responsible, these expenses must be agreed upon. The provisions of this marital settlement agreement were incorporated but did not merge with the parties' Judgment of Divorce.

DISCUSSION
The rules for interpreting marital settlement agreements are well-established,
[a] stipulation of settlement which, like the one at issue here, is incorporated but not merged into a judgment of divorce, is a contract subject to the ordinary principles of contract construction and interpretation. These rules provide that "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms . . . [and] courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." (Keller-Goldman v Goldman, 149 AD3d 422, 424 [1st Dept 2017] citing, Bernstein v Novani, 131 AD3d 401, 405 [1st Dept 2015]).
The Father argues in sum and substance that the Mother failed to comply with the add-on provisions of the agreement, specifically, the tutoring and summer activity obligations. The Mother counters that the stipulation requires agreement as to activities before she is liable for the add-on expense and that due to the Father's alleged unilateral enrollment of the Children, she suffered damages equal to the Father's claim.
In understanding these arguments, it is crucial to realize that the Mother and Father are arguing breach of two distinct parts of the agreement. The Father is arguing the Mother's breach was of the add-ons provision. Contrastingly, the Mother claims the Father is breaching the decision-making provisions. The Mother takes the argument further to say that these provisions must be read together to indemnify her against costs she did not agree to pay.
I. The Mother's Request for Damages for Breach of the Joint-Custody Provisions
In the first instance, on legal grounds, the Mother's contention that any funds due and owing to the Father constitute damages to her for his alleged breach of the joint-custody provisions of the custody agreement because they were expenses incurred without her consent is misguided. Regardless of the factual basis for this assertion, it must be rejected.
The remedy for a breach of a custody provision of a marital settlement agreement is not monetary damages. (See e.g., Ressis v Herman, 122 AD2d 516 [4d Dept 1986][Holding money damages inappropriate remedy for breaches of visitation and custody agreement.]). The Mother's remedy lay in moving for a modification or another form of enforcement. Accordingly, the Mother's argument must be rejected under controlling authority, and her cross-motion DENIED in its entirety.
II. The Father's Requests for Enforcement of the Stipulation of Settlement
The law of the State is clear, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise [*3]of interpreting the writing." (Bernstein, supra at 405, citing Vermont Teddy Bear Co. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004]). Here, the Mother's argument that she is not responsible for fees unless they are agreed upon invites this Court to engage in such an error.
The terms are clear and unambiguous. "The mother shall pay one hundred percent (100%) and the Father shall pay zero percent (0%) of the following add-on expenses for the Children [. . .] tutoring through graduation from secondary school; [and . . . .] extracurricular activities and lessons; and organized summer programs or activities."
The fact is that the parties' add-on provisions of their agreement do not require consent for a party to become liable for their pro-rata share. Indeed, interpreting the provision requiring mutual consent would amount to this Court inserting the term "agreed-upon" into the agreement when the parties did not include that term. 
As to the Father's request for reimbursement, he provides bills from the tutoring service substantiating his request for $18,500.00 in reimbursement. There is no dispute that these sums were advanced by the Father. Likewise, he provides charges to his credit card, demonstrating payment of $6,500.00 for art classes. The Mother does not dispute that she has not paid these sums. Accordingly, the Father's requests for reimbursement of $18,500.00 and $6,500.00 for add-on arrears are GRANTED.
The Father's request for proof of life insurance is GRANTED as the Mother's counsel's affirmation makes clear "[the Mother] agrees to and has provided this information." The mootness of this issue is unclear from the record. At oral argument, it was disputed whether the policy produced was compliant with the provisions of the agreement. In any event, the Mother agreed to provide proof, and she is thus directed to provide proof of compliant life insurance.
III. The Father's Request for Declaratory Judgment
Civil Practice Laws & Rules section 3001 provides, in relevant part,
Declaratory judgment. The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. If the court declines to render such a judgment it shall state its grounds.
It is well-settled that "[t]he granting of a declaratory judgment rests in the sound discretion of the court." (Park Avenue Clinical Hospital v Kramer, 26 AD2d 613, 613 [4d Dept 1966] aff'd 19 NY2d 958 [1967]).
"The general purpose of a declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation" (Ascend Wellness Holdings, Inc. v MedMen NY, Inc., 2023 NY Slip Op 32872[U], at *10 [Sup Ct, NY County 2023, Chan, J.] citing, Touro College v Novus Univ. Corp., 146 AD3d 679, 679-80, 45 N.Y.S.3d 458 [1st Dept 2017]). Considering this Court's discretion over this request, the Court puts strong emphasis on the fact that the relief sought of declaratory judgment would be redundant as the terms of the contract, which are already incorporated into the Judgment of Divorce, already created a legal obligation upon the Mother that she pays 100% of the Children's college expenses (as defined in the agreement). Granting this branch of the Father's motion would simply have no legal effect on either party as the obligation upon the Mother already is present. The Court struggles to see the controversy here that would require the parties' rights to be clarified under the vehicle of declaratory judgment.
While the Mother may tell the Father she will not pay, declaratory judgment would have [*4]no more of a deterrent effect on this problematic behavior than the provisions of the settlement agreement already do. Indeed, the remedy for the Mother's malfeasance is evident in this very decision — the Father is reimbursed for the sums she should have paid and now she must also pay his counsel fees related to having to come to court to seek enforcement.
Moreso, " [a] cause of action for a declaratory judgment is unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract." (Apple Records, Inc. v Capitol Records, Inc., 137 AD2d 50, 54 [1st Dept 1988][internal citation omitted]; see also, Kalisch-Jarcho, Inc. v New York, 72 NY2d 727, 731-732 [1988]). Here, the marital settlement agreement has the more appropriate alternative remedy of breach and recovering monetary damages for the sums withheld in contravention of the agreement's terms. Indeed, the very posture of this post-judgment litigation animates such a finding.
The Court declines to award declaratory judgment because it would serve no practical end in this case and there is an appropriate alternative remedy in the form of breach of contract and enforcement. (See CPLR § 3001). Accordingly, the Father's request for declaratory judgment is DENIED.
IV. The Father's Request for Legal Fees
The Father succeeded in enforcing the agreement. The Father now also seeks legal fees pursuant to the Default Provision of the Agreement. The agreement's Default Provision provides, in relevant part,
If a party fails to comply with any aspect of this Agreement, and said default is not remedied within fourteen (14) days notice from the other Party in accordance with the Notices provision of this Agreement, and the other Party is required to seek judicial relief for any such alleged breach of any aspect of this Agreement, then the Party prevailing in such action shall be entitled to receive from the breaching Party his/her reasonable attorneys' fees, and all reasonable costs and disbursement resulting from or made necessary by the Party's default.
The "Notice provision" implicated in the default clause of the agreement provides,
Notices. All notices required to be sent to either Party hereto shall be sent to such party by (a) certified mail, a nationally recognized overnight courier, or by personal delivery (if accompanied by a written acknowledgment of receipt) at the Parties' residence (s); and (b) by email. The Father shall send email notices to the Mother at [her e-mail address] and the Mother shall send email notices to the Father at [his e-mail address] or at any other email addresses hereafter specified by written notice (email sufficing) to the other Party. The Notice provision has the conjunctive requirement of email and letter mail notice. Here, the Father's counsel sent an e-mail Notice of Default on February 27, 2024. The February 27, 2024, notice did not mention add-ons and merely stated the Mother was in default "by having failed to pay Combined Direct Support due for December, January and February." The Father's counsel sent a second notice of default on March 18, 2024, via email and FedEx. This notice provided the Mother was in default "by having failed to pay Combined Direct Support due for March." The Court notes that neither of these notices even mention add-ons or articulate which add-ons the Mother is in default of paying.
In addition to these letter notices, the Father's counsel sent an email notice to the Mother [*5]on March 27, 2024, which gave her specific notice of her default of the add-on provisions of the settlement agreement. While the first two letters provide the ambiguous default of "Combined Direct Support" the e-mail notice which was sent after the Father's counsel's letter sent via FedEx made clear to the Mother that she was in default of the tutoring and extracurricular activities and lessons provisions of the agreement.
The Mother argues that these notices were insufficient for the lack of specification of which areas of the agreement were defaulted upon. Here, the Father's email notice did specify the areas of the agreement in default. However, the letter mail did not specify the areas of the agreement the Mother was in default of.
To be clear, the Notices provision nor the default provision require the party to state that there needs to be any specification of the alleged default. The default provision merely provides for the parties' right under the agreement to recover fees if a breach is not cured within fourteen (14) days of notice of said default. Unlike the form of proper notice, which is plainly stated by the Notice provision, the Notice provision does not provide anything regarding the requisite substance of the notice. In this instance, the contract must be given effect on its plain terms. (Keller-Goldman, supra at 424). Here, the plain terms do not require any specific substance as to notice of default and thus, this Court cannot agree with the Mother as it would, again, amount to this Court inserting terms in the contract under the guise of interpretation.
This Court further observes that this result on these facts is not inequitable because the email notice was sent promptly after the letter notice; thus, any lack of specification in the letter mail was promptly cured by the very specific language in the email notice that spelled out which specific paragraph of the agreement were being defaulted upon. Accordingly, this Court finds the Father complied with the default provision of the parties' stipulation.
"Where the parties have agreed to provisions in a settlement agreement that govern the award of attorney's fees, the agreement's provisions, rather than statutory provisions, control." (Roth v Roth, 116 AD3d 833, 834 [2d Dept 2014]). If the Father meets the requirements of the default provision, this Court must award fees. (D.G. v M.G., 2024 NY Slip Op 50741[U], at *22 [Sup Ct, 2024, Chesler, J.] citing, Szekely v Szekely, 73 AD3d 1158, 1159 [2d Dept 2010]["Contrary to the determination of the Supreme Court, the defendant is entitled to be reimbursed for 'necessary and reasonable' attorney's fees in connection with this proceeding pursuant to the default provision in the parties' settlement agreements."]). Here, the Father met the requirements by succeeding herein on enforcement and complying with the Default & Notice provisions. Accordingly, the Father is "entitled to be reimbursed" (id.) for "[his] reasonable attorney's fees."
The Father produced a retainer agreement demonstrating he retained his counsel for "no retainer fee." The Father attaches to his moving papers two billing statements. The statement dated April 8, 2024, demonstrates a total incursion of fees in the amount of $5,231.85. Of these fees, $723.00 were not related to enforcement.[FN1]
The statement dated May 7, 2024, demonstrates that $6,542.50 of additional fees were incurred. Of these fees, $520.00 were not related to this enforcement motion. This demonstrates that $10,531.35 in legal fees were incurred in connection [*6]with this motion between those two statements.
In reply, the Father supplies three (3) finalized billing statements and one (1) drafted billing statement. The statement dated June 10, 2024, demonstrates fees in the amount of $12,192.00. Of those fees, none were unrelated to the motion; the Court notes one entry is unrelated, but there was no charge for those legal services. The statement dated July demonstrates total fees in the amount of $51.33. None of these fees were related to the instant motion; the Court notes one entry was made related to the motion, but there was no charge for those legal services. The statement dated August 9, 2024, demonstrates $0.00 in fees as both entries were not charged for. The drafted statement dated September 30, 2024, demonstrates fees in the amount of $12,430.83 were incurred. All of these fees were related to the instant motion. This represents an additional total incursion of $24,622.83 related to this motion.
Thus, upon being fully submitted, the Father has produced billing statements demonstrating legal fees incurred in connection with this motion in the amount of $35,154.18.
On the record, the Father's counsel asserted the total fees sought were $36,000.00. The Court finds these sums to be reasonable in light of the skill of counsel, work performed, lack of any retainer fee, and the prevailing rates of counsel of similar skill practicing matrimonial law in this geographic area. Further adding to the reasonable nature of these fees are the numerous discounts evident on the Father's billing statements, which resulted in effectively free legal services.
The Court does not award the full fee award because the declaratory judgment request was unsuccessful. Further, the Court is uncertain  but does not opine on  whether a request for declaratory judgment would fall within the ambit of judicial relief contemplated in the parties' Default Provision. Accordingly, the Father's request for legal fees is GRANTED to the extent that he is awarded $35,000.00 in legal fees.
The Court is not ignorant of the fact that this legal fee award is larger than the monetary relief sought. Indeed, this was explicitly acknowledged during oral argument. This difference between the monetary relief sought and the fees incurred is of no import under these circumstances.
The fact is the Father has rights afforded under a contract that he sought enforcement of. Within that same contract, the breaching party agreed to indemnify the non-breaching party against their "reasonable" legal fees if they successfully enforced the agreement. That is what happened here.
To hold otherwise would sanction the Mother's non-compliance and force the Father to be financially prejudiced until the Mother's arrears reached an undefined level that would then be arbitrarily deemed appropriate to seek judicial intervention. This would result in absurdity and proliferate contempt of court. This award of fees is important not only because it is required under the terms of the agreement but also because it is the deterrent effect of a default clause functioning as designed.
The Court can only hope that, in light of this Decision & Order, the Mother is now deterred from future non-compliance.
In the end, the people who predominantly felt the negative impact of the Mother's non-compliance were the Children. Through threats and defaults, the Children were deprived of the ability to live without unnecessary financial anxiety. This unfortunate outcome, in itself, should be a sufficient deterrent, not the threat of future costly litigation.
[*7]DECISION DATE: November 27, 2024

Footnotes

Footnote 1:As stated during oral argument, the Father's current counsel was his counsel for his underlying divorce. The additional fees are not considered herein but were merely related to work on finalizing the Father's underlying divorce.